IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CORNELIUS SMITH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION  14-0107-WS-B |
| | ) |
| WERNER ENTERPRISES, INC., | ) |
| | ) |
| Defendant. | ) |

# ORDER

This matter is before the Court on the parties' motions for partial summary judgment. (Docs. 86, 93). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 87-89, 94-95, 99-100, 107-08), and the motions are ripe for resolution. This order addresses only the issue, made a basis of the plaintiffs' motion, of whether the plaintiffs are exempt employees; other issues will be addressed in subsequent orders. After careful consideration, the Court concludes that the plaintiffs' motion as to this issue is due to be granted.

# BACKGROUND

This is the second FLSA action brought by plaintiffs employed by the defendant to provide certain trucking services to a non-party ("Boise") that operates a paper mill in Jackson, Alabama. *See Pritchett v. Werner Enterprises, Inc.*, Civil Action No. 12-0182-WS-C. In *Pritchett*, as here, the defendant claimed the benefit of the Motor Carrier Act ("MCA") exemption. In August 2013, the Court denied the defendant's motion for summary judgment on this issue. *Pritchett v. Werner Enterprises, Inc.*, 2013 WL 4524337 (S.D. Ala. 2013). In December 2013, the Court denied the defendant's second motion for summary judgment on the issue and granted the plaintiffs' competing motion for summary

judgment, holding that "[t]he MCA exemption does not apply in this case." *Pritchett v. Werner Enterprises, Inc.*, 2013 WL 6909892 at *8 (S.D. Ala. 2013). The plaintiffs herein seek to replicate that success, while the defendant apparently hopes that third time's a charm.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*,

477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1]  Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

The FLSA generally requires payment of time-and-a-half for hours in excess of 40 in a workweek.  29 U.S.C. § 207(a)(1).  But "[t]he provisions of section 207 of this title shall not apply with respect to … any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 …."  *Id*. § 213(b)(1).  This provision is known as "the Motor

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").  "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

Carrier Act exemption." *Abel v. Southern Shuttle Services, Inc.*, 631 F.3d 1210, 1211 (11th Cir. 2011).

"We construe FLSA exemptions narrowly against the employer," and "[t]he employer has the burden to show that an exemption applies." *Abel*, 631 F.3d at 1212. Indeed, the employer must establish the exemption "by clear and affirmative evidence." *Gregory v. First Title of America, Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (internal quotes omitted).

"There are two requirements for an employee to be subject to the motor carrier exemption." *Walters v. American Coach Lines, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009). "First, his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA." *Id*. "Second, the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id*. (internal quotes omitted); *accord* 29 C.F.R. § 782.2(a). The plaintiffs concede that the first element is satisfied. (Doc. 94 at 6).

The following facts concerning the physical layout of Boise's Jackson operation are uncontroverted. It includes three physically separated facilities, consisting of a base mill, a sheeter facility, and a warehouse. The base mill site includes two paper machines (J-1 and J-3) and a recycle facility. The sheeter facility site includes the sheeter facility along with a trailer yard and loading docks, where trailers are loaded with product for delivery to customers. Communication among the three facilities is by public road, specifically, Industrial Parkway. The sheeter facility site is about 2½ miles away from the base mill, with the warehouse another ¼ mile from the sheeter facility.

The following facts concerning Boise's production process are uncontroverted. Boise creates paper from pulp on its J-1 and J-3 machines, the paper leaving the machines in the form of "jumbo rolls." The jumbo rolls are so heavy they are transported to the sheeter facility in 40-foot containers (mounted on

4

removable chassis) specially modified with an additional steel floor and so large that only eight of them can fit on a load.  The sheeter facility holds four machines, each of which takes six jumbo rolls at a time and feeds them through the machine, where a rolling knife cuts the paper to the correct size.  There are varying sizes into which the machines cut the paper to make copy paper, printing paper, and other types of communication paper.  The cut paper is stacked in 500-sheet reams, wrapped, and placed in cartons.  The cartons are then stacked on pallets and wrapped.  During this process, if Boise determines there is a section of paper that has wrinkles or some defect, "that roll is dumped and not made into paper."  Boise considers the steps that occur at the sheeter facility to be "part of the production process for copy paper," and it does not consider the jumbo rolls to constitute finished paper.

The defendant considers four forms of movement to constitute transportation of property in interstate commerce for purposes of the MCA exemption:  (1) the movement of jumbo rolls from the base mill to the sheeter facility; (2) the movement of scrap paper from the sheeter facility to the base mill; (3) the movement of scrap paper and pulp to and from Jackson and Mobile; and (4) the movement, within the sheeter facility grounds, of trailers loaded with outbound paper. (Doc. 99 at 11-17).

The defendant relied on the first and fourth of these categories in *Pritchett*, raising substantively the same arguments and citing essentially the same authorities as it presents herein.  These fare no better in 2015 than they did in 2013.  The Court rejects the defendant's position for the reasons it expressed previously.  *Pritchett*, 2013 WL 6909892 at *3-8.

The defendant also relied on the third of these categories in *Pritchett*, at least initially.  The Court rejected the defendant's argument because its evidence reflected, at best, the occurrence of four trips to Mobile to retrieve pulp that had moved in interstate commerce, "by two plaintiffs (out of twelve), during one week (out of at least 156 covered by the plaintiffs' affidavits)."  2013 WL 4524337 at

5

*7. The defendant abandoned this line of attack on its second motion for summary judgment. 2013 WL 6909892 at *3 & n.2.

The defendant's evidence in this case is even weaker than in *Pritchett*. The defendant identifies a grand total of three trips to Mobile to retrieve pulp, by two plaintiffs (out of thirteen), occurring at indeterminate times over a multi-year period. (Doc. 99 at 5 n.28). Worse, the defendant lacks "clear and affirmative evidence" that this pulp had traveled in interstate commerce before reaching Mobile.[2] And while the defendant has evidence that one plaintiff delivered scrap paper to Mobile on "countless" occasions, (*id*.), it has no evidence that this material then moved outside the state.

The defendant is thus limited to the second category: the movement of scrap paper from the sheeter facility to the base mill.[3] Alone among the defendant's arguments, this one is not a retread. The defendant offers evidence from four plaintiffs that they engaged in such transport, (Doc. 99 at 4 n.22), and it offers evidence that Boise's Jackson operation received such paper from out-of-

---

[2] The defendant cites a Boise representative for the proposition that pulp retrieved in Mobile from Georgia-Pacific "could" have originated outside the state, which on its face is inadequate to meet the defendant's stringent burden. Moreover, the defendant ignores the witness's testimony that Georgia-Pacific only rarely supplied Boise with pulp from outside Alabama. 2013 WL 4524337 at *7 n.18. The defendant's statement in brief that pulp retrieved from Mobile "often" came from outside Alabama, (Doc. 99 at 5), lacks any support in the record. While the defendant cites its Exhibit 13 for this proposition, that exhibit addresses only the shipment of "wastepaper to Jackson AL," not the shipment of pulp to Mobile. (Doc. 99-13 at 3).

[3] In its statement of facts, the defendant asserts that some of this scrap paper was rejected at the base mill and transported back to the sheeter facility for pick-up by over-the-road drivers. (Doc. 99 at 4-5). In its argument, the defendant does not assert that this movement is relevant to the exemption analysis. In any event, the defendant identifies no evidence that the rejected scrap paper, once picked up at the sheeter facility, was taken out of state.

Similarly, in its statement of facts, the defendant asserts that some of this scrap paper was moved from the sheeter facility to the warehouse. (Doc. 99 at 4). The defendant's argument, however, is limited to movement from the sheeter facility to the base mill. (*Id*. at 14-15).

state sources on over 800 occasions from 2011 to 2014. (*Id*. n.23). The defendant laconically suggests that this material remained property in interstate commerce until coming to rest at the base mill, under the "practical continuity of movement" standard expressed in *Walters v. American Coach Lines, Inc*., 575 F.3d 1221, 1227 (11th Cir. 2009). (Doc. 99 at 14).

The problem is that, as the defendant concedes, "[i]n determining whether goods are transported as a practical continuity of movement in interstate commerce, courts look at the shipper's 'fixed and persisting intent' at the time of the shipment." (Doc. 99 at 10-11 (quoting *Mena v. McArthur Dairy, LLC*, 352 Fed. Appx. 303, 305-06 (11th Cir. 2009)).[4] The defendant, however, has not even identified the shipper or shippers of the various shipments of scrap paper, much less offered any evidence that the fixed and persisting intent of the shipper (whether Boise, the seller, or some other person or entity) at the moment of shipment was that the scrap paper would remain in interstate commerce until received at the base mill.

In sum, each of the defendant's arguments in favor of the MCA exemption's applicability is factually and/or legally bankrupt. The plaintiffs thus are entitled to partial summary judgment on the exemption issue.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for summary judgment as to the MCA exemption is **granted**. The MCA exemption does not

---

[4] An agency policy statement relied on by the defendant herein and in *Pritchett* addresses the precise question of how to determine whether the intra-state movement of goods, after they have crossed state lines and been stored in a warehouse or distribution center, is movement in interstate commerce. Consistent with the defendant's position, it establishes that "[t]he essential and controlling element in determining whether the traffic is properly characterized as interstate is whether the shipper has a 'fixed and persisting intent' to have the shipment continue in interstate commerce to its ultimate destination," which intent must exist "at the time of shipment." Motor Carrier Interstate Transportation – From Out-of-State Through Warehouses to Points in the Same State, 57 Fed. Reg. 19812 (May 8, 1992).

apply in this case.  This ruling governs all further proceedings in this action, including trial.

    DONE and ORDERED this 20th day of July, 2015.

                                              s/ WILLIAM H. STEELE
                                              CHIEF UNITED STATES DISTRICT JUDGE