IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CORNELIUS SMITH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0107-WS-B |
| | ) |
| WERNER ENTERPRISES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion for an award of attorney's fees, costs and expenses. (Doc. 152). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 152, 159, 161, 163-64), and the motion is ripe for resolution.[1] After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

The plaintiffs brought this action in March 2014 to recover unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"). The parties settled their differences in August 2015 but could not reach agreement on an appropriate award of fees and costs as contemplated by 29 U.S.C. § 216(b). The instant motion followed.

## DISCUSSION

"The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant,

---

[1] The defendant's motion for leave to file a sur-reply, (Doc. 165), is **denied**.

and costs of the action."  29 U.S.C. § 216(b).  The analysis of *Hensley v. Eckerhart*, 461 U.S. 424 (1983), applies to attorney's fee issues under the FLSA.[2]

As the parties agree, the starting point in this analysis is a multiplication of the hours reasonably expended by a reasonable hourly rate, the product of which is known as the lodestar.  *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).  The defendant challenges aspects of both the multiplier and the multiplicand.

"In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)."  *Bivins*, 548 F.3d at 1350.  The *Johnson* factors include:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1242-43 (11th Cir. 2011).

### A.  Reasonable Hourly Rates.

The plaintiffs request an hourly rate of $350 for Richard W. Fuquay and $225 for George M. Keahey.  The defendant proposes rates of $275 and $150, respectively.  (Doc. 159 at 9-10, 11).

---

[2] *Hensley* construed 42 U.S.C. § 1988, but "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  461 U.S. at 433 n.7.  The Eleventh Circuit has repeatedly applied *Hensley* in an FLSA context.  *Martinez Hernando County Sheriff's Office*, 579 Fed. Appx. 710, 713 (11th Cir. 2014); *Padurjan v. Aventura Limousine & Transportation Service, Inc.*, 441 Fed. Appx. 684, 685-86 (11th Cir. 2011); *Galdames v. N&D Investment Corp.*, 432 Fed. Appx. 801, 806 (11th Cir. 2011); *Perez v. Carey International, Inc.*, 373 Fed. Appx. 907, 910-11 (11th Cir. 2010).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The fee applicant bears the burden of establishing … hourly rates." *Id.* at 1303.

It appears that no judge has ever declared a reasonable hourly rate specifically for Messrs. Fuquay and Keahey in an FLSA case. However, in the past few years, Mr. Banks Ladd repeatedly has been awarded a $250 hourly rate in FLSA cases, including by the Court.[3] While Mr. Fuquay has more years in practice than Mr. Ladd, he has not pursued more FLSA cases in this District (and he claims no such cases in other fora).[4]

As one of Mr. Fuquay's declarants correctly points out, "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000). The Court therefore considers the other evidence and arguments presented by the plaintiffs and by their declarants.

Mr. Fuquay has been in practice for 24 years, with a large percentage of his practice "in the field of employment related litigation." (Doc. 152-2 at 3). He has represented dozens of clients in employment related cases (mostly plaintiffs but some defendants), (*id.*), but the Court's review of CM/ECF reveals that most of

---

[3] *E.g., Clark v. Northview Health Services, LLC*, 2013 WL 3930095 at *1 (S.D. Ala. 2013); *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1265-66 (S.D. Ala. 2013). Highly experienced FLSA counsel from Birmingham have likewise been limited to a $250 rate. *Cormier v. ACAC Inc.*, 2013 WL 6499703 at *3 (S.D. Ala. 2013). The plaintiffs suggest the Court has "awarded" fees in an FLSA case at a $375 hourly rate. (Doc. 152-2 at 9). The fees in that case, however, were agreed to by the parties. The Court has been unable to locate any case from the Southern District of Alabama, of any description, in which an hourly rate exceeding $300 has been awarded over objection.

[4] Mr. Ladd first received a $250 hourly rate in his tenth FLSA case in this District, which was filed eight years after his first. This is Mr. Fuquay's ninth FLSA case in this District, and it was filed 22 years after his first.

these have been discrimination and/or retaliation cases under Title VII, FMLA and similar statutes.  While FLSA claims involve employees and employers, they do not involve discrimination or (at least in this case) retaliation.  Mr. Fuquay's employment related experience, while it reflects his familiarity with the procedures of federal litigation, thus does not translate directly into substantive expertise in FLSA matters, which would have to be gained through previous FLSA litigation.  This is Mr. Fuquay's ninth known FLSA case; five of his previous eight cases were filed over fifteen years ago.[5]

The same declarant mentioned above asserts, with some basis for personal knowledge, that the fee charged by lawyers with 25 or so years experience and "knowledgeable about complex legal matters and litigation," in non-contingent matters, to clients that are not regular clients, "is often in the neighborhood of $275-$350 per hour and even more."  (Doc. 152-9 at 7-8).  Without saying exactly why, the declarant opines that the high end of this range is appropriate for Mr. Fuquay.  (*Id*. at 6).  Indeed, the declarant proposes that the hourly rate be set above $350 "to account for the contingency factor," (*id*. at 10-11), that is, the chance the case will come a cropper and result in no recovery at all despite the attorney's expenditure of time and other resources.

A second declarant believes that $350 is a reasonable hourly rate, and up to $400 justified, in light of the contingent nature of the case and the "undesirability" of FLSA cases.  (Doc. 152-10 at 5-6).

A third declarant testifies that, in his experience, lead counsel in federal employment litigation cases charge between $250 and $350 per hour.  (Doc. 152-11 at 3).  He believes Mr. Fuquay should be compensated at the high end of this range due to the number of plaintiffs, the travel involved, the complexity of the

---

[5] Mr. Fuquay's most recent FLSA cases prior to this one are:  *Pritchett v. Werner Enterprises, Inc*., Civil Action No. 12-0182-WS-C; *White v. Keith's Quality Pools, Inc*., Civil Action No. 09-0210-KD-M; and *Carriveau v. Ole River Condominium Association, Inc*., Civil Action No. 02-0307-CG-M.

case, the tenacious defense mounted, and the contingent nature of the representation.  (*Id.* at 3-4).

A fourth declarant states he is "generally aware that other lawyers of similar experience and ability in the Mobile, Alabama legal community routinely charge $275-$375+ an hour."  (Doc. 152-13 at 4).

A fifth declarant asserts that he is "somewhat familiar with rates billed and paid in the Mobile area in employment litigation and similar cases" and that the "prevailing market rate in Alabama for plaintiffs' attorneys in cases such as the current case ranges from $175 to $350 per hour."  (Doc. 152-12 at 4).

A few observations are in order.  First, the applicant must produce "satisfactory evidence that the requested rate is in line with prevailing market rates," and  "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."  *Norman*, 836 F.2d at 1299.  "Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate."  *Id*.  While opinion testimony is permissible, to be useful it must consist of "[e]vidence of rates" historically commanded.  *Id*.  This eliminates the second declarant, who offers a legal analysis but professes no awareness of historical rates charged and collected in similar lawsuits.  It likewise renders unhelpful the opinions of the first and third declarants that Mr. Fuquay should be given a $350 (or more) hourly rate.

Second, "[t]he general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed."  *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (internal quotes omitted).  "The relevant market is thus Mobile …."  *Ceres Environmental Services, Inc. v. McCrary Trucking, LLC*, 2011 WL 1883009 at *5 (S.D. Ala. 2011).[6]  Neither the first nor the third declarant specifies that his information (and especially the upper reaches of the range he identifies) is from Mobile or that it addresses (or at least includes) counsel in FLSA cases.  The

---

[6] *Accord Perkins v. Mobile Housing Board*, 847 F.2d 735, 737 (11th Cir. 1988).

second of these objections applies as well to the fourth declarant, and at least the first of them applies to the fifth declarant.  This makes it difficult to accept at face value a $350-$375 upper range of historical rates charged and collected locally in FLSA or similar litigation.

Third, to the extent the contingent nature of representation or the undesirability of certain cases can be used to justify a reasonable hourly rate above what is supported by extrapolation from historical data,[7] there is no basis for any such adjustment here.  This case is essentially a repeat of *Pritchett v. Werner Enterprises, Inc*., Civil Action No. 12-0182-WS-C, involving the same lawyers, the same defendant, and the same class of employees – making the same claim, arising out of the same facts, and involving the same defenses[8] – as were present in *Pritchett*.  The *Pritchett* defendant's only complete defense (a statutory exemption) was conclusively rejected in December 2013, (*id*., Doc. 104), after which it was certain the plaintiffs would prevail, and the only question was by how much.  (*Id*., Doc. 105 at 4-5).  In early March 2014, the parties in *Pritchett* concluded a settlement of $250,000 to be split among the twelve plaintiffs.  (*Id*., Doc. 127 at 6).  When this essentially identical case was filed three days later, counsel could scarcely be more certain they would obtain a recovery for their clients and thus receive a hefty attorney's fee award.[9]

Once a range of prevailing market rates is established, the Court must select a point on that continuum reflecting counsel's approximate position along it.  The range of rates "is accounted for almost always by experience, skill and reputation,"

---

[7] The Court has been offered no reason to believe that past awards to FLSA counsel in this District do not take such factors into consideration.

[8] The only significant exception is a judicial estoppel defense asserted in this case against one plaintiff.

[9] The parties in *Pritchett* agreed to an award of fees of $124,625.00, plus expenses of $2,995.00, (*id*., Doc. 127 at 11), which the Court found to be reasonable.  (*Id*., Doc. 129 at 1).

with reputation and experience ordinarily mere "proxies for skill." *Norman*, 836 F.2d at 1300.  Legal skill includes judgment in case assessment; expertise in negotiations and tactics; organization and efficiency; knowledge of trial practice and substantive law; and persuasiveness. *Id*. at 1300-01.  "It is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar …." *Id*. at 1301.

As noted, the judges of this District have awarded an attorney with similar FLSA experience an hourly rate of $250.  Although the plaintiffs have not shown that the upper end of the range of relevant prevailing market rates in similar cases reaches as high as $350, several circumstances combine to persuade the Court that Mr. Fuquay should receive an hourly rate of $300 in this particular case.  First, the complexity of this case exceeds that of many FLSA cases that have supported a $250 hourly rate.  Second, the defendant has acknowledged that Mr. Fuquay can justify a $275 hourly rate.[10]  And third, Mr. Fuquay's experience in *Pritchett*, and thus his intimate familiarity with the facts and issues (and how to address them) – which are relevant skills within the contemplation of *Norman* – rendered him uniquely qualified to prosecute this action effectively and efficiently.

Mr. Keahey has been in practice ten years.  Most of his practice is in state court, but he has been involved in nine federal lawsuits; only *Pritchett* involved the FLSA.  (Doc. 152-3 at 3-4).  While one declarant has opined that Mr. Keahey should be awarded a $225 hourly rate, (Doc. 152-12 at 5), the Court concludes that his experience and expertise are comparable to that of the second-chair attorney in *Clark v. Northview Health Services, LLC*, 2013 WL 3930095 at *2 (S.D. 2013),

---

[10] "In *Pritchett* …, Mr. Fuquay received an hourly rate of $275.00 …. Plaintiffs' counsel have failed to establish they are entitled to a higher hourly rate in this matter." (Doc. 159 at 9-10).  The defendant has nowhere asserted that Mr. Fuquay should be compensated at a *lower* rate than he received in *Pritchett*, only that he should not receive a *higher* rate.

and *Lee v. Krystal Co*., 918 F. Supp. 2d 1261, 1266 (S.D. Ala. 2013).  As in those cases, the Court concludes that an appropriate hourly rate is $175.

### B.  Hours Reasonably Expended.

The plaintiffs seek payment for 286.0 hours of Mr. Fuquay's time and 381.5 hours of Mr. Keahey's time.  The defendant seeks substantial reduction in these numbers on a variety of grounds.

"Fee applicants must exercise what the Supreme Court has termed 'billing judgment,'" which requires the exclusion of "'excessive, redundant, or otherwise unnecessary'" hours.  *Barnes*, 168 F.3d at 428 (quoting *Hensley*, 461 U.S. at 424).  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them …."  *Id*.  Moreover, because an assessment of the reasonableness of the hours requested (at least when objection is adequately raised by the defendant) "contemplate[s] a task-by-task examination of the hours billed," *id*. at 429, plaintiffs' counsel is required to record each task, and the time associated with each, with sufficient clarity that the Court can evaluate the reasonableness of the expenditure of time.  *E.g., Hensley*, 461 U.S. at 441 ("The party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.") (Burger, C.J., concurring).

The plaintiffs attempt to defeat at the outset the defendant's entire attack on their requested hours.  They suggest the defendant is estopped to criticize counsel's recordkeeping because, in *Pritchett*, it "gave Plaintiffs' counsel every indication that the methods they used to record their time was [sic] acceptable and allowed them to make a valid analysis of the reasonableness of the time and tasks undertaken."  (Doc. 164 at 4).  This "indication" arose because, after reviewing counsel's time records (which apparently included some or all of the practices criticized herein), the defendant signed off on the parties' joint motion for approval of settlement agreement, which included the statement that "the hours

expended by Plaintiffs' attorneys is reasonable." (*Pritchett*, Doc. 127 at 12).
Even could estoppel arise from a throw-away comment in a joint motion filed only
to obtain judicial blessing of an agreed financial resolution of a conflict (a
proposition the plaintiffs do not attempt to support),[11] there is nothing inherently
inconsistent between the quoted statement and the defendant's position herein.
The defendant could easily agree that the hours expended were reasonable without
also agreeing that the plaintiff's recordkeeping was sufficient to *prove* the hours
expended were reasonable.  In short, the defendant is not precluded from raising
its objections.

### 1.  Block billing.

"'Block billing' occurs when an attorney lists all the day's tasks on a case
in a single entry, without separately identifying the time spent on each task."
*Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 Fed.
Appx. 198, 203 (11th Cir. 2012).  The practice is objectionable because it "makes it
difficult, if not impossible, to calculate with any precision the number of hours an
attorney devoted to a particular task," *Barnes*, 168 F.3d at 429, thereby "making it
difficult … to gauge reasonableness."  *Ceres*, 476 Fed. Appx. at 203.  The
plaintiffs, "who are responsible for the problem to begin with," are not free "to
penalize the defendants for plaintiffs' failure to keep more precise records."
*Barnes*, 168 F.3d at 429.

The plaintiffs respond that the inclusion of multiple tasks in a single entry
is not "block billing" when the tasks are "intertwined" and the entry provides a

---

[11] The plaintiffs should be careful what they wish for.  If the joint motion in
*Pritchett* were to preclude the defendant's challenge to the reasonableness of the
plaintiffs' claimed hours, it would probably also preclude the plaintiffs' request for an
hourly rate greater than $275 for Mr. Fuquay or $175 for Mr. Keahey, since the same
document includes their concession that each figure "is a reasonable hourly rate" for
them.  (Doc. 127 at 11-12).  As one would expect, the plaintiffs insist that their
concession in *Pritchett* was a mere "compromise" that "should in no way preclude" them
from seeking a higher hourly rate herein.  (Doc. 164 at 2).  What is sauce for the goose is
sauce for the gander.

"thorough description" of each activity; such a practice, they say, "'clarifies, rather than obscures, the record.'"  (Doc. 164 at 4 (quoting *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009)).  That does not seem to be the approach of the Eleventh Circuit in *Barnes* and *Ceres*, which focus on the defendant's inability to determine how much time was spent on each of multiple tasks, not on how well each task was described.  Nor can the Court agree with the plaintiffs that each instance of alleged block billing in this case satisfies the *Williams* standard.[12]

"Courts have … approved across-the-board reductions in block-billed hours to offset the effects of block billing." *Ceres*, 476 Fed. Appx. at 203.  The *Ceres* Court upheld this Court's 10% across-the-board reduction in block-billed hours as an antidote to the objectionable practice.  *Id*.  The Court concludes that a similar reduction is warranted here.  After reviewing the entries pointed out by the defendant, the Court identifies 77.8 hours of Mr. Fuquay's time and 129.9 hours of Mr. Keahey's time as attributable to objectionable block entries.[13]  In consequence, Mr. Fuquay's time will be cut by 7.8 hours and Mr. Keahey's time by 13.0 hours.

### 2.  Inadequate description.

"[T]he general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303.  "In addition to a reduction for block billing, a time entry may be further discounted where the description of the

---

[12] Which is not to say that the defendant has completely avoided overreaching. Thus, for example, the Court rejects the defendant's characterization of a daily entry as block billing simply because it lists multiple parts of the joint pretrial document on which Mr. Fuquay worked at different times during the day; the single task in which Mr. Fuquay was engaged was preparation of the joint pretrial document.  (Doc. 152-4 at 10).

[13] Mr. Keahey's post hoc effort to assign specific time increments to each of multiple tasks in his block billed entries, (Doc. 164-4), is too little, too late.

work performed is overly vague." *Bujanowski v. Kocontes*, 2009 WL 1564263 at *2 (M.D. Fla. 2009). Examples are entries for "discussion," "conference" or "review." *Id*. at *3 n.2.

After considering the entries targeted by the defendant, the Court concludes that only a few of them require a reduction for unacceptable vagueness. Except for entries reflecting telephone calls between the plaintiffs' lawyers (which are discussed in the following section), the only challenged entry the Court finds to be objectionably vague is Mr. Keahey's use of the unadorned term, "research." The Court concludes that a 20% reduction in claimed hours is adequate to address this objectionable practice. Thus, Mr. Keahey's claimed time will be reduced by 2.0 hours.

### 3. Lawyer communications.

Billings for "intraoffice communication between plaintiff's multiple lawyers … are disfavored and are subject to close scrutiny to prevent abuse." *Lee*, 918 F. Supp. 2d at 1269. Flags go up more readily when such billings "represent a sizable portion of the total hours billed." *Id*. (internal quotes omitted). While some communication between a client's lawyers is necessary, even vital, *id*. at 1269 n.11, it must not be allowed to become an easy way to pad billings.

By the Court's count, Mr. Fuquay's billing records reflect telephone conferences with Mr. Keahey on 40 separate days, not to mention ten days in which they engaged in e-mail exchanges. The telephone calls averaged about half an hour each, meaning that some 40 hours (twenty hours for each lawyer on the call) are being claimed for such calls, or about 6% of the total attorney hours. In most instances, the lawyers' time records reflect simply "telephone conference" or "phone call," with no suggestion of what was discussed. Under these circumstances, the Court concludes that a 20% reduction in hours claimed for telephone communications with co-counsel is appropriate to account for counsel's

excessive use of, and poor recording of, such calls.  Accordingly, the Court will reduce each lawyer's time by 4.0 hours.

### 4.  **Non-lawyer tasks.**

A lawyer may not bill for performing clerical tasks.  *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989). The defendant identifies a number of entries it believes reflect the performance of clerical tasks, but the Court construes those entries otherwise.  The sole exception is Mr. Keahey's entry on September 29, 2015.  The Court will exclude 2.1 hours of Mr. Keahey's time on this basis.

### 5.  **Duplicative work.**

"There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."  *Norman*, 836 F.2d at 1302.  However, "[t]he time billed for excessive lawyers in a courtroom or conference when fewer would do, may obviously be discounted."  *Barnes*, 168 F.3d at 433 (internal quotes omitted).  The defendant does not object to the plaintiffs' use of two lawyers in general, but it does argue that it should not be required to pay for both lawyers' attendance at a settlement conference, two discovery hearings, corporate depositions in Omaha, and the final pretrial conference.

Counsel divided labor so that Mr. Keahey handled most client contact (as he shares the plaintiffs' Clarke County residence), including their depositions, some early settlements of certain plaintiffs, and a plaintiff-specific motion for summary judgment.  Mr. Fuquay handled most of the discovery, including interrogatories and requests for production to the defendant and depositions of the defendant's representatives.  He also handled all other dispositive motions.

The plaintiffs assert that Mr. Keahey's attendance at the July 2014 settlement conference "was necessary for the conference to have any chance of

success due to the division of labor utilized in the case." (Doc. 164 at 5-6). Since the plaintiffs originally retained Mr. Keahey and had almost all contact with him, and since no settlement could occur without their agreement, the Court accepts that Mr. Keahey's presence at the settlement conference was appropriate.

The discovery hearings were on motions to compel prepared and filed by Mr. Fuquay regarding discovery requests he had crafted and propounded. The plaintiffs say Mr. Keahey's attendance was necessary due to the number of clients and volume of the documents. (Doc. 152-2 at 7). It is difficult to see how the number of plaintiffs could affect the need for a second lawyer at the motion hearings. As to the volume of documents, the basis of the first motion to compel was that no documents had been produced, and the primary basis of the second motion to compel was that no documents relevant to liquidated damages had been produced. (Docs. 51, 62). Nothing in the motions to compel suggests that Mr. Keahey's presence was necessary or even useful. Indeed, Mr. Keahey acknowledges that Mr. Fuquay "took the lead" on oral argument. (Doc. 152-3 at 11). The Court concludes that Mr. Keahey's time for attendance at (and travel to and from) these hearings should be excluded from the fee award. This results in a reduction of 9.0 hours.

Mr. Keahey traveled to Omaha for the depositions of David Davis and Adam Osher. He attended Mr. Davis's deposition (which Mr. Fuquay took) and took Mr. Osher's deposition. The plaintiffs say Mr. Keahey's presence was reasonable because he had attended the depositions of the plaintiffs, and the transcripts of some of those depositions were not yet available, so that only Mr. Keahey knew what their testimony had been. (Doc. 152-2 at 7; Doc. 152-3 at 11-12). At least as utilized by the plaintiffs, however, both depositions centered on the liquidated damages issue, specifically, steps the defendant had or had not taken to determine if employees in the plaintiffs' position were subject to the FLSA. (Docs. 94-4, 94-8). The defendant represents that the depositions "pertained to Werner's records and policies in setting up the Boise account," (Doc. 159 at 17),

and the plaintiffs do not contradict that characterization in their reply. Instead, they change the rationale for Mr. Keahey's presence to "the voluminous documents produced and the importance of all of these depositions." (Doc. 164 at 5). But there has been no showing that voluminous records were relevant to these depositions – indeed, two weeks after they were taken, the plaintiffs complained that the defendant had produced no records relevant to liquidated damages prior to the depositions and only one such document at the depositions. (Doc. 62). And the importance of the Osher deposition weighs against Mr. Keahey's taking of it, since Mr. Fuquay is admittedly the FLSA specialist of the two, in general and in this instance. (Doc. 152-3 at 9; Doc. 164 at 5). The Court concludes that Mr. Keahey's time for attendance at (and travel to and from) the Omaha depositions should be excluded from the fee award. This results in a reduction of 27.2 hours.

The plaintiffs identify, and the Court perceives, no need for Mr. Keahey to be present at the final pretrial conference. The Court concludes that Mr. Keahey's time for attendance at (and travel to and from) the pretrial conference should be excluded from the fee award. This results in a reduction of 4.0 hours.

### 6. Excessive time.

The defendant argues that a number of individual entries, either alone or in combination, reflect an excessive amount of time devoted to the task. For many of these entries, the defendant merely makes the objection without explanation. "[T]he law in this circuit commands that both the proof of the hours spent in litigation and any corresponding objections posed be voiced with a similar exactitude." *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996); *accord Norman*, 836 F.2d at 1301. The defendant's obscurity provides an insufficient platform for review.

The Court has assessed each of the entries as to which the defendant has provided an explanation for its position. The Court disagrees with many of them, generally because the defendant has underestimated either the scope of the task or

the amount of time reasonable for its completion.[14]  However, the Court does find that Mr. Keahey has billed an excessive amount of time for certain tasks, including that of reading orders and other brief documents from the Court.  The Court will exclude 5.2 hours of Mr. Keahey's time on this basis.[15]

### 7.  Contemporaneous time records.

The defendant contends that Mr. Keahey's post-judgment billing records reflect that he did not keep contemporaneous records but reconstructed his time from memory or other sources after the fact.  (Doc. 163 at 3-4).  Mr. Keahey testified, however, that all he did after the fact was organize his time in the manner presented to the Court, "from records maintained of my work performed in connection with this action and … recorded on a daily basis."  (Doc. 154 at 2; Doc. 161-2 at 2).  The defendant argues that no fee can be awarded for time spent on such activity, but without citing any authority supporting that proposition.  Accordingly, the Court will not reduce Mr. Keahey's hours on this basis.

### C.  Lodestar Calculation.

The plaintiffs seek an award for 286.0 hours of Mr. Fuquay's time at $350 an hour, for a total of $100,100.  They seek an award for 381.5 hours of Mr. Keahey's time at $225 an hour, for a total of $85,837.50.  For the reasons set forth above, the Court will make an award based on 274.2 hours of Mr. Fuquay's time at $300 an hour, for a total of $82,260, and based on 315.0 hours of Mr. Keahey's time at $175 an hour, for a total of $55,125.

---

[14] "[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done …."  *Barnes*, 168 F.3d at 432 (internal quotes omitted).

[15] The entries from which this reduction is taken are:  May 30, July 7 and August 18, 2014; and January 5, May 11, May 15 and June 6, 2015.

### D.  Adjustments to the Lodestar Amount.

"[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350.  However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." *Hensley*, 461 U.S. at 434 (internal quotes omitted).  The plaintiffs seek no upward adjustment,[16] but the defendant presses for a downward adjustment of unspecified magnitude based on the results obtained.  In particular, the defendant argues that the plaintiffs recovered much less than their early settlement demand and not much more than the defendant's early settlement offer.  (Doc. 159 at 20-23).

"When considering this factor [of the results obtained], we must compare the amount of damages sought to the amount awarded." *Gray ex rel. Alexander v. Bostic*, 720 F.3d 887, 894 (11th Cir. 2013).  Thus, in *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir. 1987), the trial court did not abuse its discretion in awarding one-third of the lodestar amount to a plaintiff who recovered only 1.5% of the damages sought (and failed on seven of eight claims).  *Id.* at 1580-81.  Even where a plaintiff recovers 23% of the amount sought and prevails on every claim submitted to the jury, the trial court has discretion to consider a downward adjustment (at least if other factors such as heightened public benefit do not counsel against it).  *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1307 (11th Cir. 2001).  Here, however, the plaintiffs recovered approximately 50% of their original settlement demand.  (Docs. 140, 150, 164-7 at 5).  The defendant, which simply urges the Court to cut the lodestar amount without offering any analysis or

---

[16] The perfunctory suggestion in their reply brief that they be awarded an upward adjustment, (Doc. 164 at 13), comes too late to be considered.  "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining the underlying rationale).  Any argument for an upward adjustment could and should have been presented in the plaintiffs' principal brief.

legal authority, (Doc. 159 at 20, 22), has done nothing to persuade the Court that a recovery of over $175,000 as against a demand of approximately $352,000 is so insubstantial as to warrant a fee reduction, and the Court declines to create or support an argument on the defendant's behalf.

The defendant's major argument is that the plaintiffs should suffer a reduction – if not complete elimination – of fees incurred after receipt of the defendant's July 2014 offers of judgment under Rule 68. The ten unaccepted offers of judgment totaled $137,141.77. (Doc. 159 at 4).[17] These ten plaintiffs eventually settled for $168,580.39. (*Id*. at 6-7).[18]

The defendant asserts that "substantial settlement offers made by a defendant, including Rule 68 offers of judgment, should be considered in determining the reasonableness of a fee award." (Doc. 159 at 20). The defendant relies for this proposition on *Johnson v. GDF, Inc.*, 668 F.3d 927 (7th Cir. 2012), and *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313 (M.D. Fla. 2001).

The *Johnson* Court, 668 F.3d at 932, relied for the quoted proposition on *Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2000). "[A]n offer is substantial if … the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Id*. at 967; *accord Shott v. Rush-Presbyterian-St. Luke's Medical Center*, 338 F.3d 736, 743 (7th Cir. 2003). The *Wales* Court, 192 F. Supp. 2d at 1325, relied on *Haworth v. Nevada*, 56 F.3d 1048 (9th Cir. 1995). "We … hold that in an FLSA case when a Rule 68 offer of judgment has been rejected, and judgment is obtained for less than the settlement offer, these

---

[17] One plaintiff accepted his offer of judgment. (Doc. 159 at 5).

[18] Another plaintiff, who was not added until after the offers of judgment were extended, eventually settled for $4,036.11. (*Id*. at 6-7).

circumstances must be considered by the district court in determining what fee is reasonable." *Id*. at 1052.[19]

By the defendant's own authorities, then, consideration of a downward adjustment is triggered when the plaintiff recovers less than (or no more than) the amount of the settlement offer.  The ten plaintiffs who rejected the defendant's offers of judgment, however, cumulatively recovered approximately 23% more than the cumulative amount of the offers, or about $31,438 extra.  Every one of the ten recovered more than the amount of his or her Rule 68 offer – for one of them, more than 400% more.  The defendant has failed to show that the Court must or even should consider a downward adjustment under such circumstances.

Even when a rejected settlement offer exceeds the amount of the plaintiff's recovery, a court "need not reduce the lodestar calculation because of the offer." *Moriarty*, 233 F.3d at 967.  "The district court may evaluate the settlement offer and decide that under the circumstances of a particular case an unadjusted lodestar method still provides a reasonable attorney's fee."  *Id*.  Even were the Court to consider the defendant's settlement offer, it would conclude that no downward adjustment should be made based upon the plaintiffs' rejection of it.

This is not the parties' first rodeo.  In *Pritchett*, the parties' settlement:  (1) paid each plaintiff 100% of the claimed overtime using a Monday-Sunday workweek; (2) included lunch breaks as compensable time for purposes of calculating overtime hours; and (3) added a 6% sweetener. (*Pritchett*, Doc. 127 at 4-6).  In contrast, the offers of judgment in this case excluded the second and third of these elements.  In addition, the offer of judgment for plaintiff Smith offered him only 10% of the overtime that the defendant itself calculated (on the grounds the defendant believed him subject to a judicial estoppel defense).  (Doc. 159 at 3-4).  The defendant does not even attempt to articulate a reason why the plaintiffs

---

[19] The plaintiffs' recovery in *Wales* was less than the Rule 68 offer.  192 F. Supp. 2d at 1325.

should have accepted a settlement offer so inferior to what the *Pritchett* plaintiffs had received.  Nor does the defendant explain why Smith should have agreed to accept one-tenth of his owed overtime based on a judicial estoppel defense that the Court later rejected not just once, but twice.  (Docs. 48, 121).  Moreover, and as the plaintiffs knew from the Court's treatment of the issue in *Pritchett*, they stood a good chance of being awarded liquidated (double) damages by the Court, given what may charitably be described as the defendant's superficial consideration of FLSA coverage, and given the Court's discretion to award liquidated damages regardless of the employer's objective good faith.  (*Pritchett*, Doc. 106).[20]

Finally, the defendant notes that it is "'improper, unreasonable and non-compensable for a plaintiff's attorney to delay or sabotage an achievable settlement for the purpose of ratcheting up attorney's fees.'"  (Doc. 159 at 20-21 (quoting *Lee*, 918 F. Supp. 2d at 1272)).  It is not clear whether the defendant intends to insinuate that plaintiffs' counsel engaged in such behavior, but they have pointed to nothing that could colorably support such an accusation.  Nothing suggests even remotely that the plaintiffs were willing to accept less than their fellow employees were offered in *Pritchett* but that Mr. Fuquay and Mr. Keahey pressured them into continuing the lawsuit just so they could command a larger fee.

In short, the defendant has offered nothing sufficient to alter the "strong presumption" that the lodestar amount is the appropriate award.  Accordingly, the Court will award that amount.

---

[20] Nine of the ten plaintiffs who rejected offers of judgment eventually recovered 100% of the overtime owed under a Monday-Sunday workweek, with no exclusion for lunch breaks and with a sweetener above and beyond this amount.  Only Smith received less than that, due to the defendant's continued insistence on judicial estoppel, (Doc. 152-2 at 12), and he still received more than 400% of what the defendant had offered.  (Doc. 150 at 2; Doc. 159-5 at 22).

**E. Costs.**

Mr. Fuquay seeks $1,795.63 in costs, while Mr. Keahey seeks $10,884.19. (Docs 152-7, -8).

"The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  The defendant argues that costs awardable under Section 216(b) are limited to those listed in Section 1920 and that many of the plaintiffs' costs lie outside the scope of that provision.  (Doc. 159 at 24-25).

"[N]othing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A. § 1920."  *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988).  Costs beyond those listed in Section 1920 are shifted only if the specific statute awarding costs "refers explicitly" to the element of costs at issue.  *Id.* (explaining *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).  While *Glenn* involved only expert witness fees, its holding extends to any element of costs sought under Section 216(b).  *Mock v. Bell Helicopter Textron, Inc.*, 456 Fed. Appx. 799, 802 (11th Cir. 2012) ("Though plaintiffs may, in addition to fees, recover the 'costs of the action' in ADEA [or FLSA] cases …, this Court has clearly held [in *Glenn*] that cost recovery is limited by 28 U.S.C. § 1920.").  The Court has previously recognized this limitation on the recovery of costs under the FLSA, *Clark*, 2013 WL 3930095 at *9, as have many sister courts within the Eleventh Circuit.[21]

The plaintiffs respond that at least some of the expenses to which the defendant objects could be included as part of the attorney's fee award.  (Doc. 154

---

[21] *E.g., Cobb v. City of Roswell*, 987 F. Supp. 2d 1319, 1327 (N.D. Ga. 2013); *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1315 (S.D. Fla. 2009); *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005); *Jackson v. Jump*, 2014 WL 10558844 at *9 (S.D. Ga. 2014); *Fox v Tyson Foods, Inc.*, 2009 WL 9541256 at *21-22 (N.D. Ala. 2009).

at 12-13).  For this proposition, they rely on Fourth Circuit precedent.  *See Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) ("We have emphasized, however, that, where attorney's fees are expressly authorized by statute (as they are in 29 U.S.C. § 216(b)), the trial court is not limited to Rule 54(d), but, in addition, has authority to include litigation expenses as part of a 'reasonable attorney's fee.'") (footnote omitted).  Fourth Circuit precedent is of course not binding in the Eleventh.

From within the Eleventh Circuit, the plaintiffs note the *Mock* Court's statement that the trial court "did not err in refusing these [travel and transcript] expenses as part of Mock's attorneys' fees, rather than costs," giving as its reason not that such a recovery is legally impossible but that the travel expenses were for an attorney whose services were unnecessary and that the transcript expense had in fact been awarded as part of deposition fees.  456 Fed. Appx. at 802-03.  *Mock* is a slender reed, both because the Court never said that expenses can be awarded as fees rather than costs under Section 216(b) and because it offered no authority or analysis that could support such a proposition.  Moreover, since the expenses at issue either had been awarded as costs or could not be recovered in any event because they were not reasonable, any such statement would have been purest dictum.

Although uncited by the plaintiffs, the Court notes that several sister courts have wrestled with the issue whether expenses not recoverable as costs under Section 216(b) may nevertheless be recovered as attorney's fees.  *Compare Wales*, 192 F. Supp. 2d at 1329 (litigation expenses may be awarded as part of attorney's fees under Section 216(b)) *with Williams*, 657 F. Supp. 2d at 1317-18 (disagreeing with *Wales*).

The Court need not wade into this controversy, because the plaintiffs have not timely injected it into these proceedings.  The parties notified the Court of their settlement on August 3, 2015, (Doc. 141), and the plaintiffs knew no later than August 31, 2015 that the defendant would not agree to their requested fees

21

and expenses.  (Doc. 164 at 1).  On September 3, 2015, the Court provided the plaintiffs until October 1, 2015 by which to file any motion for attorney's fees and related nontaxable expenses.  (Doc. 147).  The plaintiffs therefore had two months from the parties' settlement, and one month from their knowledge that their pursuit of an award would be contested, in which to research and develop their arguments in support of their fee petition.  The plaintiffs nevertheless did not ask the Court to award any expenses as part of their attorney's fees; instead, they specifically requested only their "costs of the action," quoting Section 216(b), which request encompassed every item they now seek to have awarded as fees rather than costs.  (Doc. 152 at 3-4).  Only after the defendant pointed out that costs under Section 216(b) are limited to those permitted by Section 1920 did the plaintiffs seek to switch horses.  Under these circumstances, the Court will follow the general rule against considering arguments first raised on reply.  *See* note 16, *supra*.[22]

The defendant identifies $482.63 of Mr. Fuquay's claimed expenses, and $3,962.51 of Mr. Keahey's claimed expenses, that fall outside the parameters of Section 1920.  (Docs. 159-11, -12).  The plaintiffs identify no disagreement.  The Court therefore will reduce the claimed expenses by these amounts.  Mr. Fuquay will be awarded $1,313.00 in costs and Mr. Keahey $6,921.68.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for an award of attorney's fees, costs and expenses is **granted in part**.  The Court awards

---

[22] The impact of this ruling is modest.  All but $765.37 of the costs challenged by the defendant would be non-recoverable even had the plaintiffs sought them as fees rather than costs and persuaded the Court that such an award is permissible.  The bulk of the challenged costs (about $3,400) represent Mr. Keahey's travel expenses to depositions and hearings as to which his presence was redundant and unreasonable.  Part B.5, *supra*. *See Mock*, 456 Fed. Appx. at 802 (Florida plaintiff could not recover travel expenses for Dallas counsel when non-local counsel was unnecessary to begin with).  Another $262.70 of Mr. Keahey's claimed expenses could not be awarded under any circumstances due to his inadequate description of the expenses and their reasonableness.  (Doc. 159-12 at 2).

reasonable attorney's fees for Mr. Fuquay in the amount of $82,260.00 and for Mr. Keahey in the amount of $55,125.00.  The Court awards costs of Mr. Fuquay in the amount of $1,313.00 and of Mr. Keahey in the amount of $6,921.68.  To the extent the plaintiffs seek additional recovery, their motion is **denied**.

DONE and ORDERED this 13th day of November, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE